# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| BRANDIE N. LORENZEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 16-cv-9608 |
| v. | ) | |
| | ) | Magistrate Judge Cox |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Brandie N. Lorenzen ("Plaintiff") filed this action seeking reversal of the final decision of the Commissioner of Social Security denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"). Plaintiff filed a Motion for Summary Judgment on February 7, 2017.[dkt. 13].The Commissioner filed her response on May 24, 2017. [dkt. 22]. Plaintiff filed her Reply on May 30, 2017. [dkt. 23]. For the reasons discussed below, Plaintiff's motion for summary judgment is granted. This matter is remanded for further proceedings consistent with this opinion.

## BACKGROUND

### I. Procedural History

Plaintiff filed for SSI as an adult on December 5, 2012, alleging disability beginning December 6, 1997.[1] (R. 22). Her claim was denied initially on May 8, 2013, and upon reconsideration on November 4, 2013. (*Id.*) Plaintiff filed a written request for hearing on November 20, 2013. (R. 154). She appeared and testified at a hearing held on January 6, 2015, in Orland Park, Illinois. (R. 40). The ALJ also heard testimony from Duane Biglow of Eps

---

[1] The Plaintiff received SSI as a child due to intellectual disability. (R. 22.) There are different disability standards for children and adults. (*Id.*)

Rehabilitation, Inc., an impartial vocational expert ("VE"), and Kelly Lorenzen, Plaintiff's mother. (*Id.*) Plaintiff was represented by John E. Horn, attorney. (*Id.*)

The ALJ issued his written decision denying Plaintiff's application for SSI on April 14, 2015. (R. 35). The Appeals Council denied review on August 20, 2016, thereby rendering the ALJ's decision the final decision of the agency. (R. 1); *Herron v. Shalala*, 19 F.3d 329, 332 (7th Cir. 1994).

## II. Medical Evidence

From December 28, 2011, until September 13, 2013, Plaintiff was seen often at Lurie Children's Hospital for her rheumatoid arthritis and asthma. (R. 383-1953). Plaintiff took Remicade for her arthritis, which reportedly improved her symptoms. (R. 395).

Regarding Plaintiff's learning disability, Plaintiff has produced two IQ tests. The first was performed by Alan Long, Ph.D., and was performed October 5, 2004, when Plaintiff was nine years old. (R. 371). She performed at a low average range for verbal comprehension, extremely low in perceptual reasoning, and was borderline in working memory, and processing speed. (R. 372). Her full-scale IQ was 70, which Dr. Long noted was borderline. (*Id.*) His report also noted that Plaintiff had been tested twice before, in 1998, when she earned a full scale IQ of 65 and in 2001 when she earned a full scale IQ of 64. (R. 371).

She was tested by Felix Caceres, M.A., L.C.P.C., on November 19, 2007, when she was twelve. (R. 377). This record showed low average general intelligence and similar verbal and nonverbal skills. (R. 377). The Plaintiff also demonstrated reading ability in the 33rd percentile and writing skills in the 19th percentile. (*Id.*) She had low math skills for her grade. (*Id.*) The examiner noted that Plaintiff's math and writing skills fell below the range predicted by her intelligence. (*Id.*) She had relative weaknesses in her sequential processing and short term visual memory; her math and written expression skills were poorly developed for her grade. (*Id.*) He

recommended that she be considered for Special Education eligibility under the Learning Disability category. (*Id.*)

**III.    School Records**

In addition to medical reports, Plaintiff produced Progress Reports from her high school. (R. 227-56). In January 2013, Plaintiff was meeting goals on her individualized education program ("IEP"), including obtaining information required for her transition to post-secondary education, such as knowledge of acceptance requirements, registration information, and tuition. (R. 228). In her Summary of Performance from November 9, 2012, Plaintiff appears to be meeting the majority of the goals set for her by her IEP team. (R. 233). Plaintiff is reading and comprehending at the 12th grade level in regular education classes with accommodations and received a 12 on the reading section of the ACT. (R. 233). She scored a 6 on the math section of the ACT, showing she was "beginning to develop" the skills to perform one-operation computation with whole numbers and decimals. (R. 234). She is reportedly a "typical high school senior," interested in attending Columbia College in Chicago and going into theater and film. (R. 234). She recognized how her disability affected her school work and identified accommodations and services that helped her succeed in her school work. (*Id.*) The report also listed recommendations to help the student, including suggesting that Plaintiff completed job applications, continued living at home to save money and work towards independent living skills, sought opportunities for community participation, and continued to research specific programs at Moraine Valley Community College. (R. 236). She was also described as a "bright hard working student" and "self-advocate for herself" who understood "how to use her accommodations in her classes." (R. 238). Her reading skills are average; her English teacher believed she could comprehend the novels read in class, but benefitted from having them read to her or listening to the audiobook. (*Id.*)

In her earlier reports, from 2009-2010, the administrator noted that Plaintiff did not

independently know how to locate a place to live in the community, set up a living situation, manage her own money, or use local transportation. (R. 242). However, she maintained personal grooming and hygiene and could perform everyday household tasks. (*Id.*) She knew how to get a job and demonstrated general job skills and work attitude preferred by employers for keeping a job and advancing. (*Id.*) It was still recommended that she take occupational essentials in her sophomore year. (*Id.*) Her report from November 9, 2012, stated that Plaintiff had been functioning in the school setting with no concern regarding her social or emotional needs and recommended that social work services on a consult basis be discontinued. (R. 256).

Plaintiff also produced letters from Trinity Christian College written in December 2013 and January 2014 dismissing her for failure to obtain the required GPA of 1.00. (R. 2051-52). She received additional help from Moraine Valley Community College's Center for Disability Services. (R. 2053). However, she produced a letter dated December 22, 2014, putting her on warning status at Moraine Valley because her GPA was below 2.0. (R. 359). She was placed on Academic Caution and required to attend a 90-minute Academic Success Workshop. (R. 360).

### IV. Testimony

Plaintiff testified that she was making $150.00 a month working five to ten hours a week as a cashier at Michael's. (R. 52). She had difficulty with standing, lifting, and trying to make it to work on time at that job. (R. 64). She had difficulty counting the money in her cash drawer because would forget the amount in the drawer or the amount she owed the customer. (R. 65). She had difficulty breathing and required an inhaler twice a day. (R. 53).

Plaintiff testified that she was in special education throughout middle and high school because she had a learning disability and a low IQ score. (R. 67). She graduated from high school with a diploma. (R. 67). Plaintiff testified to difficulty remembering things like when she should go to school or be at work. (R. 69). She estimated her coworkers and managers helped her for two

4

minutes out of every thirty while she's at work. (R. 69). She had a manager help her "constantly" and make sure she gave customers the right amount of money. (R. 77-78). She had attended Trinity College for a semester but "flunked out" and went to Moraine Valley Community College instead. (R. 71). When she took only two classes at Moraine Valley, she did "fine," but when she transferred to full-time status, she did not do as well. (R. 71).

Plaintiff's mother, Kelly Lorenzen, also testified. (R. 80). She testified that Plaintiff was diagnosed with Idiopathic Juvenile Arthritis around age seven or eight. (R. 81). Her parents were aware that Plaintiff had learning difficulties because she was not toilet trained until five, went to a special program for high-risk preschoolers, and had to attend regular doctor's visits while she was a baby to ensure she was developing properly. (R. 84). Plaintiff's mother testified that she was told Plaintiff suffered from was mental retardation when her daughter was in first grade. (R. 85-86). Plaintiff's mother testified that she had observed Plaintiff at work and that Plaintiff did not make eye contact, did not have social skills, seemed very lost, and was unable to appropriately deal with an angry customer. (R. 90). Plaintiff's mother did not let her or her sister out of the house because she felt they were "very naïve." (R. 91). Plaintiff's mother reminded Plaintiff to not carry too much weight, to take her medicine and do her homework, to eat meals, take showers, and get dressed. (R. 91-93). While Plaintiff was at work, her manager would help her. (R. 93). Sometimes Plaintiff would cry if she did not understand a task and she would refuse to ask for help because she did not want people to see her disability. (*Id.*) She testified that Plaintiff's swelling in her leg never goes down; Plaintiff is required to wear bigger clothes and wider shoes. (R. 95).

Duane L. Bigelow testified as the VE at the hearing. (R. 97). He testified that Plaintiff's work at Michael's was as a Cashier Two, skill level two, strength level light. (R.99). Both the VE and the ALJ acknowledged that Plaintiff's work does not rise to the level of substantive gainful activity. (*Id.*) The ALJ then asked the VE several hypothetical questions. (*Id.*) The VE testified

5

that a hypothetical individual as described by the ALJ and operating at the light level could perform work as a garment sorter, a laundry sorter, or a sorter. (R. 104). A similar individual with a sedentary limitation would be able to perform work as an inspector or sorter. (R. 105). When questioned by Plaintiff's attorney, the VE testified that an individual who required supervision for half of an eight hour day would be classified as "supported" and would not be considered capable of competitive employment. (R. 105-06). If a person were off task more than 50 percent of the time due to a combination of factors, that would preclude work. (R. 107).

V.     **ALJ Decision**

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since December 5, 2012, the application date. (R. 24). At step two, he determined that Plaintiff suffered from the following severe impairments – juvenile rheumatoid arthritis, learning disorder, asthma, and borderline intellectual functioning. (*Id.*) He determined that she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (*Id.*) The ALJ specifically considered Listings 14.09 (inflammatory arthritis), 3.03 (asthma), and 12.05C and D (intellectual disability). (R. 24-25.)

The ALJ determined that Plaintiff's RFC was as follows:

> She had the ability to perform, lift, or carry up to 20 pounds occasionally and 10 pounds frequently, no limitations in the total amount of time she is able to sit, stand, or walk throughout an 8 hour work day; she will need to alternate her position between sitting, standing, and walking for no more than five minutes out of every hour, while doing so, she will not be off task; she can frequently push and pull up to 10 pounds, 20 pounds occasionally; climb ramps and stairs and occasionally stoop, kneel, balance, crouch, and crawl, but never climb ladders, ropes, or scaffolds; she can reach in all directions and perform fine and gross manipulations frequently but cannot perform forceful grasping or torqueing; she should avoid concentrated exposure to pulmonary irritants such as fumes, odors, dusts, gases, and poor ventilation; she is limited to working in nonhazardous environments, and cannot drive at work, operate moving machinery, work at unprotected heights or around exposed flames or unguarded large bodies of water, and should avoid concentrated exposure to unguarded hazardous machinery; the Plaintiff is capable of complex written or verbal communications; she can read and

6

write at the fifth grade level and perform simple math at the third grade level; Plaintiff is further limited to simple, routine, and repetitive tasks, work involving no more than simple decision-making, no more than occasional and minor changes in the work setting, and work requiring the exercise of only simple judgment; she can work at an average production pace but not at a high or variable pace; she is precluded from work involving direct public services, in person or over the phone, or in crowded or hectic environments; she can tolerate brief and superficial interaction with the public, which is incidental to her primary job duties, but is not capable of performing teamwork or tandem tasks. (R. 29).

Plaintiff had no past relevant work. (R. 32). At step five, considering Plaintiff's age, education, work experience, and residual functional capacity, the ALJ determined that there were jobs that exist in significant numbers in the national economy that the Plaintiff could perform. (R. 34). Therefore, Plaintiff was not disabled. (*Id.*)

## STANDARD OF REVIEW

The ALJ's decision must be upheld if it follows the administrative procedure for determining whether the plaintiff is disabled as set forth in the Act, 20 C.F.R. §§ 404.1520(a) and 416.920(a), if it is supported by substantial evidence, and if it is free of legal error. 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Skinner v. Astrue,* 478 F.3d 836, 841 (7th Cir.2007) (quoting *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). The ALJ is not required to address every piece of evidence or testimony presented, but must provide a "logical bridge" between the evidence and his conclusions. *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000). The court views the record as a whole but does not reweigh the evidence or substitute judgment for that of the ALJ. *Schmidt v. Apfel,* 201 F.3d 970, 972 (7th Cir.2000). *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

When reviewing for substantial evidence, the court will not displace the ALJ's judgment by reconsidering facts or evidence or making credibility determinations. *Skinner*, 478 F.3d at 841. "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning

whether [Plaintiff] is disabled, [the court] must affirm the ALJ's decision denying benefits." *Books v. Chater,* 91 F.3d 972, 978 (7th Cir.1996); *Schmidt*, 496 F.3d at 842.

## ANALYSIS

Plaintiff forwards three arguments for consideration: 1) that her impairments meet or equal listing 12.05C, 2) that the withholding or loss of Plaintiff's records warrants an inference of spoliation in Plaintiff's favor, and 3) that the ALJ erred in evaluating her subjective symptoms. Because the Court finds that the ALJ erred in failing to properly consider Listing 12.05C, it does not reach all of the issues raised by the Plaintiff in this appeal.

### I. The ALJ erred by not obtaining a medical evaluation when determining whether Plaintiff met or equaled a specific Listing

Plaintiff argues that the ALJ erred by failing to determine that she met the requirements for Listing 12.05C, which covers intellectual disorders.[2] Plaintiff focuses her argument on three issues, 1) that she met the Paragraph C criteria of the Listing, 2) that she met the "deficits in adaptive functioning" requirement in the diagnostic paragraph of the Listing, and 3) that the ALJ's analysis is deficient because the record does not include a medical opinion explicitly discussing Listing 12.05.

The Listings streamline the benefit determination analysis by identifying those impairments that would prevent an adult, regardless of age, education, or work experience, from performing *any* gainful activity, not just substantial gainful activity. *Sullivan v. Zebley*, 439 U.S. 521, 532 (1990). The Listings' medical criteria are explicitly more restrictive than the statutory disability standard. *Id.* The Listings were designed to operate as a presumption of disability that makes further inquiry unnecessary. *Id.* The ALJ must continue her analysis after determining that

---

[2] The SSA recently revised its criteria in the Listing of Impairments ("listings") used to evaluate claims involving mental disorders. *Revised Medical Criteria for Evaluating Mental Disorders*, 81 Fed. Reg. 66138, 66138-78 (Sept. 26, 2016) (to be codified at 20 C.F.R. Pts. 404 and 416), available at https://www.gpo.gov/fdsys/pkg/FR-2016-09-26/pdf/2016-22908.pdf. Because these rules apply to claims filed on or after January 17, 2017, all references to the listings in this opinion refer to the prior version.

a claimant does not meet a Listing since a claimant may still be able to show that she cannot engage in any other work in the economy, meaning she is disabled even without meeting a Listing. *Id.*

At step three, an ALJ must consider whether a claimant's impairments meet or medically equal a listed impairment, either singly or in combination. 20 C.F.R. § 404.1520(a)(4)(iii). An ALJ should identify the Listing by name and offer more than a perfunctory discussion. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). A claimant may also satisfy a Listing by showing that his impairment is accompanied by symptoms that are equal in severity to those described in the Listing. 20 C.F.R. § 404.1526. A finding of medical equivalence requires an expert's opinion on the issue. *Barnett*, 381 F.3d at 670; *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015).

Here, the agency's medical examiners did not consider Listing 12.05 in performing their reviews. Nor did any medical expert provide testimony at the hearing regarding the Plaintiff's intellectual disorders. In short, no medical professional reviewed Plaintiff's files with an eye towards whether she met or medically equaled Listing 12.05. Therefore, the ALJ's finding that Plaintiff's mental impairments, singly and in combination, do not meet or medically equal the severity of Listing 12.05 is not based on an expert opinion and is not supported by substantial evidence.

On remand, the Commissioner should base his determination on such a record. This Court does not decide whether Plaintiff is entitled to benefits, but reminds Plaintiff that she has the burden of showing that her impairments satisfy or equal in severity the elements of a listed impairment. *Filius v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012); *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2005). Plaintiff attempts to argue that her IQ scores alone are sufficient to meet this requirement, but that's incorrect. The diagnostic section of the Listing addresses a larger concern, namely, that an IQ score alone, especially in this moderate range of 60 to 70, may not

accurately reflect a claimant's abilities. *Rojas v. Colvin*, No. 15 CV 50017, 2016 WL 3742854, at *3 (N.D. Ill. July 13, 2016). Plaintiff's argument on remand must look beyond her IQ scores.

## II.     The Copies of Other ALJ Decisions Provided by Plaintiff

Plaintiff argues that Defendant's withholding or loss of her records warranted an inference of spoliation in Plaintiff's favor. [dkt. 14 at 8]. However, as pointed out in Defendant's response and admitted in Plaintiff's reply, these documents were included and could be found at R. 2032-48. [dkt. 22 at 3; dkt. 23 at 5].

In her reply, Plaintiff attempts to argue that these records show that an updated medical expert opinion of medical equivalency was necessary. She did not explain in her original memorandum what negative inference she wanted this Court to draw. The Court has ruled on the issue of having a medical expert weigh in on whether Plaintiff meets or medically equals a Listing. The arguments are otherwise waived since arguments raised for the first time in a reply brief are waived. *Mendez v. Perla Dental,* 646 F.3d 420, 423-24 (7th Cir.2011); *Broaddus v. Shields*, 665 F.3d 846, 854 (7th Cir. 2011), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013).

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is granted. This matter is remanded for further proceedings consistent with this opinion.


Enter: 12/19/2017

_____
U.S. Magistrate Judge, Susan E. Cox